IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

TERRANCE ROBERTS,

                    Petititoner,

      v.

TOM WATSON,

                   Respondent.

OPINION AND ORDER

16-cv-541-bbc

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Petitioner Terrance Roberts is a federal prisoner who has filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241 to challenge convictions from the year 2000 for money laundering and conspiracy to commit money laundering in connection with a prostitution ring, in violation of 18 U.S.C. § 1956.  Petitioner contends that his convictions are invalid under United States v. Santos, 553 U.S. 507 (2008), because both his indictment and the instructions the jury received are inconsistent with the Supreme Court's interpretation in that case of § 1956, a statute that prohibits certain financial activities involving the "proceeds" of an unlawful activity.  In particular, petitioner says that the Court defined "proceeds" to mean "profits," but he was charged and convicted under a theory that "proceeds" means "receipts."  In other words, he was charged and convicted under a theory that "proceeds" means gross income rather than net income.

The court screened the petition and directed the government to respond, dkt. #4, and

1

then asked for supplemental briefing in an April 25, 2017 order to develop several issues, dkt. #14. In its supplemental response, the government seems to abandon all but one argument. In particular, the government says that petitioner was convicted of both "promotional" and "concealment" money laundering, that petitioner received concurrent sentences for those convictions and that <u>Santos</u> does not undermine the conviction for money laundering under a concealment theory, so even if the conviction for promotional money laundering is invalid, it would not affect petitioner's sentence. Although the government's objection has potential merit, the government has failed to develop its argument that <u>Santos</u> does not affect convictions for concealment money laundering. Accordingly, I am giving the government one last opportunity to show cause why the petition should not be granted.

## OPINION

### A. <u>2009 Amendments and Venue</u>

In the April 25, 2017 order, I asked the parties to address two new issues. First, I noted that Congress had amended the definition of "proceeds" in a 2009 amendment to the money laundering statute, 18 U.S.C. § 1956(c)(9), and I asked the parties to discuss whether the amendment has any bearing on the petition. Second, I noted that, after petitioner filed this case, he was transferred from the Federal Correctional Institution in Oxford, Wisconsin to the Federal Correctional Institution in Sandstone, Minnesota, and I asked the parties to discuss whether petitioner's transfer to a prison in Minnesota has any bearing on venue.

In its supplemental response, the government acknowledges that the 2009

amendment to § 1956(c)(9) is not retroactive and therefore has no bearing on petitioner's claim. Dkt.#18 at 11. Second, the government does not seek a change in venue as a result of petitioner's prison transfer. Id. Accordingly, it is unnecessary to discuss those issues.

## B. Procedural Requirements for Bringing a Petition under § 2241

A prisoner may not bring a habeas petition under § 2241 unless "the remedy by motion [under § 2255] is inadequate or ineffective to test the legality of his detention." 28 U.S.C. § 2255(e). To satisfy § 2255(e), a prisoner must show the following: (1) he is seeking correction of a fundamental defect in his conviction or sentence (such as a claim of actual innocence); (2) his petition is based on a rule of statutory law not yet established at the time he filed his first § 2255 motion; (3) the new rule applies retroactively; (4) he is barred from bringing a successive § 2255 motion; and (5) he either raised the issue on direct appeal or in a § 2255 motion or the issue was foreclosed by controlling precedent at the time. Light v. Caraway, 761 F.3d 809, 812-13 (7th Cir. 2014); Hill v. Werlinger, 695 F.3d 644, 648 (7th Cir. 2012); Morales v. Bezy, 499 F.3d 668, 672 (7th Cir. 2007); United States v. Prevatte, 300 F.3d 792, 799-800 (7th Cir. 2002); In re Davenport, 147 F.3d 605, 610-11 (7th Cir. 1998). See also Webster v. Caraway, 761 F.3d 764, 767 (7th Cir. 2014) ("When a change of law, retroactively applicable, shows that the prisoner did not commit a crime or has received an illegally high sentence, § 2241 is available if it otherwise would be impossible to implement the Supreme Court's intervening decision.").

In its initial response to the court's order to show cause, the government did not

challenge petitioner's ability to show that he was challenging a fundamental defect in his conviction, that his claim relied on a new rule of statutory law or that he was unable to bring a motion under § 2255. I agree with the government's implicit concession that petitioner has satisfied those requirements. Petitioner is contending that he is actually innocent of money laundering, so that qualifies as a fundamental defect, Montana v. Cross, 829 F.3d 775, 783 (7th Cir. 2016); Santos is a new rule of statutory interpretation; and petitioner cannot file a motion under § 2255 because he already filed such a motion and he does not meet the criteria for filing a successive petition. 28 U.S.C. § 2255(h)(2) (successive petition allowed only for newly discovered evidence or new rule of constitutional law).

The government stated in its initial response that petitioner could have raised his claim in a timely § 2255 motion, but the government did not develop the argument and it ignored United States v. Simmons, 154 F.3d 765, 770 (8th Cir. 1998), the case on which petitioner relied for the proposition that his claim was foreclosed by circuit precedent until the Supreme Court decided Santos. (There is no dispute that Eighth Circuit precedent is relevant for the purpose of determining whether petitioner's claim was foreclosed because petitioner was convicted in that circuit.) The government also seemed to question in a footnote whether Santos should apply retroactively, but, again, it did not develop the argument. Accordingly, I asked the government to address the questions whether: (1) Simmons prevented petitioner from filing a timely petition under 28 U.S.C. § 2255; and (2) whether Santos applies retroactively.

In its supplemental response, the government all but concedes that both issues should

be resolved in petitioner's favor. Although the government does not say expressly that Santos is retroactive, it "concedes that Santos is a substantive statutory interpretation case and that it is within this Court's authority" to conclude that Santos applies retroactively. Id. at 1. As I noted in the April 25 order, the courts of appeal in at least four circuits have concluded that Santos applies retroactively. Wooten v. Cauley, 677 F.3d 303, 308–09 (6th Cir. 2012) ("Because the new definition of a key phrase in the money laundering statute is a substantive change of law and increases the government's burden of proof, we agree with the Fourth, Fifth, and Eleventh Circuits in holding that Santos is retroactive."). I am not aware of any courts that have reached a different conclusion. In the absence of any argument from the government, I will follow Wooten.

As to the question whether petitioner could have raised his claim in a timely § 2255 motion, the government devotes several pages of its 12-page supplemental response to arguing that Simmons did not foreclose petitioner's claim. Dkt. #18 at 4-7. In particular, the government says that Simmons was not dispositive because it involved an interpretation of the word "proceeds" in the context of the RICO statute, not the money laundering statute.

I need not decide whether Simmons foreclosed petitioner's claim because the government cites another case that did. In particular, the government cites United States v. Huber, 404 F.3d 1047, 1058 (8th Cir. 2005), in which the court rejected a defendant's argument that the meaning of "proceeds" in the money laundering statute excludes expenses. The government acknowledges that Huber was decided before petitioner's § 2255 motion

was resolved and it states that the case "arguably could have foreclosed" petitioner's claim. Dkt. #18 at 8.

The government does not expressly concede that <u>Huber</u> barred petitioner's claim in 2005, but it does not develop an argument in favor of a contrary conclusion. On its face, <u>Huber</u> would not appear to leave any room for petitioner's contention that "proceeds" should be interpreted to mean gross income rather than net income. Further, <u>Huber</u> has since been interpreted as rejecting that view. <u>Prost v. Anderson</u>, 636 F.3d 578, 603 (10th Cir. 2011) (Seymour, J., concurring in part and dissenting in part) (citing <u>Huber</u> for proposition that "a federal money laundering conviction may stand even if the defendant laundered only gross receipts, not profits"); <u>United States v. Afremov</u>, No. CRIM.06-196(JRT/SRN), 2007 WL 3237630, at *23–24 (D. Minn. Oct. 30, 2007) (adopting same view). Again, I see no reason to question this view. Accordingly, I conclude that petitioner has met the procedural requirements for filing a § 2241 petition.

## B. <u>Merits</u>

In its initial response, the government made two arguments on the merits. First, it argued that "<u>Santos</u> is not applicable to the concealment aspect of money laundering," so it does not affect petitioner's conspiracy conviction. Dkt. #11 at 10. Second, it argued that "all of the money [petitioner received] was in fact net profits," so the convictions are consistent with <u>Santos</u>. <u>Id.</u> at 11. After reviewing these arguments, I concluded that both needed additional support.

As to the first argument, I noted that "the government neither includes any citations to the record showing that the conspiracy conviction relied on a concealment theory nor provides any authority or argument for the view that <u>Santos</u> would not apply in that context." Dkt. #14 at 6. I cited <u>United States v. Hosseini</u>, 679 F.3d 544, 548 (7th Cir. 2012), in which the court noted that the "question [whether <u>Santos</u> applies to a concealment theory] remains unresolved in this circuit." Accordingly, I wrote that, "[i]f the government intends to maintain this argument, it will need to develop the argument more in its amended response." Dkt. #14 at 6.

As to the second argument—that the proceeds petitioner received qualify as net profits because he "had no legitimate business operating expenses"—I noted that the government did not respond directly to petitioner's argument that both the indictment and the jury instructions defined "proceeds" in a manner that was inconsistent with <u>Santos</u>. Thus, I understood the government to be conceding that the indictment and instructions were erroneous but that the errors were harmless. The problem was that the government neither cited the harmless error doctrine nor developed an argument under it. For example, the government failed to explain why it believed that the evidence presented at trial would have required the jury to find that the proceeds petitioner received qualify as profits. It also failed to include any citations to the record to support its allegations that the proceeds petitioner received were profits and that petitioner had no business expenses.

In its supplemental response, the government does not elaborate on either argument that it made in its original response, but instead raises a new one. In particular, the

government relies on the "concurrent sentence doctrine," which allows a reviewing court "to pretermit a decision about convictions producing concurrent sentences, when the extra convictions do not have cumulative effects." Ryan v. United States, 688 F.3d 845, 849 (7th Cir. 2012). See also United States v. Olunloyo, 10 F.3d 578, 581 (8th Cir. 1993) (declining to consider alleged sentencing error because "a ruling in [defendant's] favor would not reduce the time he is required to serve nor does imposition of this sentence prejudice him in any way"). This seems to be the government's version of a harmless error argument: even if Santos supports the view that petitioner has an invalid conviction, the sentence he received runs concurrently with another valid sentence, so granting the habeas petition would not result in petitioner's receiving any relief.

Petitioner objects to the government's reliance on the concurrent sentence doctrine on the ground that the doctrine does not apply when, as in this case, each of the sentences includes a separate monetary assessment. That is true on direct appeal, Ray v. United States, 481 U.S. 736 (1987), because in that context a defendant can challenge any aspect of his sentence, but "[a] collateral attack under § 2241 . . . contests only custody . . . and not fines or special assessments," Ryan, 688 F.3d at 849, so petitioner cannot use § 2241 to challenge an assessment. See also Gardner v. Warden Lewisburg USP, 845 F.3d 99, 104 (3d Cir. 2017) ("[B]ecause collateral attacks can challenge only a prisoner's custody, special assessments are not reviewable in habeas corpus proceedings.").

The real problem with the government's new argument is that it rests on an unsupported assumptions regarding the scope of Santos. In particular, the government says

that petitioner was convicted of two types of money laundering, promotion and concealment; petitioner received concurrent sentences for those two convictions; and <u>Santos</u> applies only to the conviction for promotion. ("[C]oncealment" is the "traditional money-laundering case—where the indictment alleges that the defendant engaged in specified financial transactions for the purpose of concealing the proceeds of criminal activity or avoiding a state or federal reporting requirement." <u>Hosseini</u>, 679 F.3d at 548. "'[P]romotional' money laundering . . . is . . . using the proceeds of unlawful activity to promote an unlawful activity." <u>United States v. Aslan</u>, 644 F.3d 526, 543 (7th Cir. 2011).)

The first two premises of the government's argument appear to be undisputed and supported by the record. The verdict form shows that the jury found that petitioner committed both promotional and concealment money laundering, dkt. ##18-4, and the transcript from the sentencing hearing shows that the court gave petitioner concurrent sentences (192 months) for those convictions, dkt. #11-3 at 25. However, the third premise—that <u>Santos</u> applies only to the conviction for promotion—is a legal conclusion for which the government provides no support. It cites <u>Aslan</u> and <u>Hosseini</u> for the proposition that petitioner's "conviction based on concealment remains in effect," dkt. #18 at 10, but neither case is dispositive.

To begin with, the government assumes that Seventh Circuit law is controlling, an assumption I shared in the April 25, 2017 order, but on further review that assumption may be misplaced. As noted by the court in <u>Salazar v. Sherrod</u>, No. 09-cv-619-DRH-DGW, 2012 WL 3779075, at *4 (S.D. Ill. Aug. 31, 2012), the Court of Appeals for the Seventh

Circuit has not decided "which circuit's law applies to a 2241 petition brought in the district of the petitioner's incarceration but challenging the conviction or sentencing determination of another district court in another circuit." Following several other district courts, the court concluded that it "should apply the law of the circuit of conviction in reviewing a sentence or conviction under section 2241," in part to avoid inconsistent results with motions under § 2255, which apply the law of the circuit where the petitioner was convicted. Id. I am not aware of any cases in which a court rejected the reasoning in Salazar.

The government has neither addressed the choice of law question nor cited case law from the Eighth Circuit regarding the validity of petitioner's conviction for money laundering under a concealment theory. Obviously, if Eighth Circuit law is controlling, then case law from the Seventh Circuit would be no more than persuasive authority.

Even if I were to apply the law of this circuit, that law does not resolve the question whether petitioner's conviction for money laundering under a concealment theory remains valid after Santos. In Aslan, 644 F.3d at 547, the court of appeals stated that it is "an open and difficult question" whether "proceeds" means gross receipts or net income in the context of money laundering for the purpose of concealing rather than promoting a predicate act. The court "emphasize[d]" that it was "not . . . answering" that question in the opinion. Id. at 550. In Hosseini, 679 F.3d at 548, as noted above, the court stated that the question "remains unresolved in this circuit," pointing back to the decision in Aslan.

As the court of appeals explained at length in Aslan, the reason the question is difficult is that the scope of the holding in Santos remains unclear:

> Four justices concluded that proceeds means net profit in Section 1956(a)(1). Four justices concluded that the term proceeds means "the total amount brought in." And [Justice Stevens] concluded that the meaning of the term "proceeds" could depend upon the particular underlying predicate offense, any legislative history speaking to the meaning of the term, and whether the merger problem would arise under the particular meaning ascribed to the term.

Aslan, 644 F.3d at 544 (internal citations omitted). Although both the plurality and Justice Stevens agreed that his opinion was controlling, they disagreed about the scope of the holding and its implications for future cases. Id. This leaves it to lower courts to determine on a case-by-case basis how "proceeds" should be defined in different contexts.

It is true that in both Aslan and Hosseini, the court affirmed convictions in which the district court had defined "proceeds" as gross receipts in the context of a money laundering conviction involving concealment. However, in both cases, the defendant had failed to preserve the issue in the district court, which meant that the court of appeals reviewed the district court's decision for plain error only. And in both cases the court concluded that any error was not "plain" because the law was "unsettled." Hosseini, 679 F.3d at 548; Aslan, 644 F.3d at 550. Thus, neither Hosseini nor Aslan is controlling or even persuasive authority.

The government makes the assertion that "[a] petitioner seeking savings-clause relief under § 2241 has an even higher burden than a defendant trying to demonstrate plain or obvious error on direct review," dkt. #18 at 7, but the government neither supports nor explains the assertion. As discussed above, a prisoner seeking relief under § 2241 must meet various threshold requirements before a court can consider the merits of the prisoner's claim. However, the government cites no authority for the proposition that, if the threshold

requirements are satisfied (as the government appears to concede they are in this case), a court reviewing a § 2241 petition must grant deference to the original court's decision in the same way that the court of appeals must grant deference to a district court's decision in the context of plain error review. Because one of the prerequisites of a § 2241 petition is that the petitioner is relying on new law that the original court could not have considered, it is not clear how any deference could be granted.

Further, in <u>Aslan</u>, the court was not considering the general question whether "proceeds" are defined as gross receipts in all money laundering convictions for concealment. Rather, the court was considering a particular context in which the predicate crime was mail fraud and "the concealment was carried out across international borders." <u>Aslan</u>, 644 F.3d at 545. The court discussed various factors particular to that context in order to support its conclusion that no plain error occurred. <u>Id.</u> at 549-50. For example, the court considered whether defining "proceeds" to mean gross receipts in that context would create a "merger problem" so that "the same conduct that led to a conviction for the predicate offense would also lead to a conviction for money laundering," <u>id.</u> at 541, 545 and 549, and whether the defendant had "any true overhead expenses," <u>id.</u> at 549. The government has failed to conduct any analysis regarding how the factors considered in <u>Aslan</u> would apply in this case.

This is the second time that the government has failed to develop its arguments in response to the order to show cause. However, because the decision whether to grant habeas relief is an important one, I will give the government one last opportunity to support its position. In particular, the government should explain why it believes that petitioner's

conviction for money laundering in the concealment context is not affected by Santos, providing any factual or legal support that it has for its position. If the government believes that this court is required to apply a deferential standard of review, it should develop that argument, citing relevant legal authority. Finally, if the government continues to believe the Seventh Circuit law rather then Eighth Circuit law is controlling, it should develop an argument in favor of that view.

ORDER

IT IS ORDERED that respondent Tom Watson may have until July 31, 2017, to file a second supplemental response to the order to show cause in which it develops its argument that United States v. Santos, 553 U.S. 507 (2008), does not affect petitioner Terrance Roberts's conviction for money laundering in the concealment context. If respondent raises any other argument, it should explain why the argument has not been forfeited. Plaintiff may have until August 10, 2017, to respond. The parties should not expect to receive any extensions of time in the absence of extraordinary circumstances.

Entered this 11th day of July, 2017.

BY THE COURT:

/s/

_____
BARBARA B. CRABB
District Judge